UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>　*Plaintiff*,<br><br>v.<br><br>THE EQUIVALENT VALUE OF USDT, OR TETHER, AS CURRENTLY ASSOCIATED WITH TETHER WALLET ADDRESS BEGINNING WITH TFYDR7,<br>　*Defendant*.<br><br>[CLAIMANT: TETHER] | No. |

## VERIFIED COMPLAINT OF FORFEITURE

Now comes Plaintiff, United States of America, by and through its attorneys, David X. Sullivan, United States Attorney for the District of Connecticut, and David C. Nelson, Assistant United States Attorney, and respectfully states that:

1. This is a civil *in rem* action brought to enforce the provisions of 18 U.S.C. §§ 1341, 1343, and 1956.

2. This Court has jurisdiction over this matter by virtue of 28 U.S.C. §§ 1345 & 1355. Venue is appropriate in the District of Connecticut by virtue of 28 U.S.C. § 1395(b).

3. The Defendant Asset is the equivalent value of USDT, or Tether, as currently associated with Tether Wallet Address TFYDR788boQCk9xrBEZCp5MfungsMy2n2a ("Defendant Asset").

4. The Defendant Asset is located within the jurisdiction of this Court.

## Background of Investigation

5. On September 4, 2025, the victim T.M., filed a complaint with the Weston Police Department regarding a theft of cryptocurrency which was then-valued at approximately $234,533.

6. The theft of T.M.'s cryptocurrency occurred on September 2, 2025, resulting from an unauthorized transfer of approximately $234,533 worth of various cryptocurrency tokens from his Ledger hardware wallet.[1]

7. The fraud scheme was initiated by mail. The victim received a suspicious physical letter delivered by the U.S. Postal Service purporting to be from Ledger Security & Compliance, dated June 25, 2025, and bearing reference number LL-CMP-M7B. The letter, signed by someone claiming to be Charles Guillemet, Chief Technology Officer, informed the victim about a mandatory "Transaction Check" security feature that would be implemented across Ledger devices. The letter contained a QR code and instructed the victim to scan it with his mobile device to avoid disruption to his Ledger Live access.

8. The information in this letter was false.

9. Believing the communication to be legitimate, the victim scanned the QR code, which directed him to a fraudulent website designed to appear as an official Ledger synchronization portal. The victim was prompted to enter his 24-word recovery phrase

---

[1] A Ledger wallet is a device that allows the user to store their public and private keys associated with a cryptocurrency asset. The wallet is secured by a seed phrase, which can be used to regenerate the wallet if the device is lost.

(seed phrase)[2] as part of what he believed was a legitimate device synchronization process.

10. At the time the victim logged into the website, he was located in Connecticut and used an internet web browser.

11. Following the compromise of his seed phrase, the victim's cryptocurrency holdings were drained on September 2, 2025, between 6:22 PM and 6:28 PM EST. The unauthorized transfers involved four different cryptocurrencies across multiple blockchain networks.

12. The victim's wallet contained, *inter alia*, Ethereum, Solana, Bitcoin, and Link cryptocurrency.

13. The stolen cryptocurrency underwent a sophisticated laundering process designed to obscure the trail and convert the various digital assets into USDT (also known as "Tether") on the Tron network (leading to the Defendant Asset).

14. The Defendant Asset received the victim's proceeds in a single transfer of 200,000 USDT on September 3, 2025, at approximately 10:24 AM EST.

15. Due to the commingling of funds, the value of the victim's combined Ethereum, Link, and Solana assets, worth approximately $115,782 (equivalent to approximately the same in USDT) can be attributed to the 200,000 USDT transfer to the Defendant Asset.

---

[2] A cryptocurrency seed phrase, also known as a recovery phrase or mnemonic phrase, is the master key that provides complete access to all cryptocurrency holdings associated with a wallet. When a seed phrase is compromised, it grants the attacker full control over the victim's cryptocurrency accounts, effectively allowing them to authorize transactions as if they were the legitimate owner. Unlike traditional banking systems with fraud protection mechanisms, cryptocurrency transactions are irreversible once confirmed on the blockchain. This means that once an attacker has access to a seed phrase, they can drain all associated accounts without any possibility of reversal or recovery through the blockchain network itself.

16. Prior to August 25, 2025, there was no activity associated with the Defendant Asset. Between August 25, 2025, and September 19, 2025, the Defendant Asset received 81 inbound transactions, worth approximately $1,146,109.30. These 81 transactions came from approximately 74 different wallets. Between August 28, 2025, and September 18, 2025, the Defendant Asset had 19 outbound transactions, worth approximately $538,844.90. These 19 transactions went to approximately 11 different wallets.

17. The transactions in and out of the Defendant Asset often occurred at a rapid pace. For example, on August 25, 2025, over the course of approximately seven minutes, there were seven incoming transactions to the Defendant Asset totaling approximately $268,715.50 worth of cryptocurrency. Similarly, on August 28, 2025, between 10:25 AM and 4:22 PM EST, there were 12 transactions in and out of the Defendant Asset, resulting in approximately $250,101 worth of cryptocurrency being removed from the Defendant Asset.

18. The wallet activity in the Defendant Asset is inconsistent with an exchange or money transmission service; the Defendant Asset is likely controlled by a private party.

19. Law enforcement has traced additional funds into the Defendant Asset. For example, on September 17, 2025, an additional 499,951 USDT was transferred into the Defendant Asset. The new USDT followed the same money laundering pattern as the victim's funds.

20. Based on the rapid nature of the cryptocurrency transactions, the frequent use of pass-through wallets that served no purpose other than to obscure the nature of the transactions, and the transfer of blockchains for no apparent purpose, the Defendant Asset

and the contents therein are involved in money laundering of wire fraud and/or mail fraud proceeds.

21. The Defendant Asset was seized pursuant to a seizure warrant issued in the District of Connecticut, docket number 3:25-mc-97 (SDV).

22. The USDT tokens were burned and reissued pursuant to their seizure.

23. The Defendant Asset constitutes proceeds from Mail Fraud and/or Wire Fraud in violation of 18 U.S.C. §§ 1341 and 1343 and is involved in Money Laundering in violation of 18 U.S.C. § 1956 and are therefore subject to forfeiture pursuant to 18 U.S.C. § 981.

Wherefore, the United States of America prays that a Warrant of Arrest *In Rem* be issued for Defendant Asset; that due notice be given to all parties to appear and show cause why the forfeiture should not be decreed; that judgment be entered declaring the property to be condemned and forfeited to the United States of America for disposition according to law; and that the United States of America be granted such other relief as this Court may deem just and proper, together with the costs and disbursements of this action.

The United States requests a trial by jury.

                                  DAVID X. SULLIVAN,
                                  UNITED STATES ATTORNEY

By: /S/ David C. Nelson
     David C. Nelson (ct25640)
     Assistant U.S. Attorney
     Kayleigh R. Malone
     Legal Intern
     157 Church Street, 24th Floor
     New Haven, Connecticut 06510
     Tel:   (203) 821-3700
     Fax:  (203) 773-5373
     David.C.Nelson@usdoj.gov

**DECLARATION**

I am a Task Force Officer with the Federal Bureau of Investigation, and the individual assigned the responsibility for this case.

I have read the contents of the foregoing Verified Complaint of Forfeiture and the statements contained therein are true to the best of my knowledge and belief.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 7th day of January, 2026.

                                            /s/ Michael Grabowski
                                            MICHAEL GRABOWSKI
                                            TASK FORCE OFFICER, FBI